UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Douglas Clark, # 253429, | ) | C/A No.  4:08-535-DCN-TER |
| | ) | |
| | ) | |
| Petitioner | ) | |
| vs | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden of Lieber Correctional Institution, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

Petitioner, Douglas Clark, (Petitioner/Clark) is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his petition for a  writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on February 19, 2008. Respondent filed a motion for summary judgment on July 2, 2008, along with a return and supporting memorandum.  The undersigned issued an order filed July 3, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response.  On August 6, 2008, Petitioner filed an Affidavit in support of his petition.  He subsequently filed additional attachments to his Affidavit on August 18, 2006, an another Affidavit on December 29, 2008.

## II.    PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner is presently confined to Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Greenville County. At the September 1998 term, the Grand Jury for Greenville County indicted Petitioner for assault and battery of a high and aggravated nature ("ABHAN") (98-GS-23-4505), kidnapping (98-GS-23-4516), and first degree burglary (98-GS-23-4530). {PCR Appendix pp. 434-35; 437-38; 440-41}.

Petitioner was represented at the trial level by Regan Pendleton, Esquire. Petitioner went to trial before the Honorable C. Victor Pyle, Jr., and a jury on October 14th to 15th, 1998. The jury found Petitioner guilty of all charges, and Judge Pyle sentenced Petitioner to twenty (20) years for burglary, twenty (20) years for kidnapping, and ten (10) years for ABHAN. {PCR Appendix pp. 266-67; 436; 439; 442}.

Attorney Pendleton timely filed a notice of appeal with the state court of appeals on October 21st, 1998. Assistant Appellate Defender M. Anne Pearce, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his direct appeal. On February 16th, 2000, Pearce filed with the state court of appeals a Final Brief of Appellant, in which she raised the following issues on behalf of Petitioner:

> Whether trial judge erred in failing to suppress the victim's in-court identification where there was a substantial likelihood that it had been tainted by an unduly suggestive identification proceure, in violation of due process.

{PCR Appendix p. 270}. The State filed a Final Brief of Respondent on February 2nd, 2000. {PCR Appendix p. 284}.

Following submission to a panel of the state court of appeals on March 1st, 2000, that court affirmed the convictions and sentences by opinion dated April 17th, 2000. State v. Clark, Unpub. Op. No. 2000-UP-0282 (S.C. Ct. App. 2000). {PCR Appendix p. 301}. Assistant Appellate Defender Pearce then filed on May 2nd, 2000 a Petition for Rehearing. The court of appeals denied the Petition for Rehearing by Order dated June 28th, 2000, and the Remittitur was sent down on August 9th, 2000.

Petitioner next filed an Application for Post-Conviction Relief ("APCR") on January 10th, 2001 (01-CP-23-0158). In his pro se Application, Petitioner raised the following claims:

(1) Was trial counsel ineffective for failing to investigate the case?
(2) Was trial counsel ineffective for failing to object to amendment of indictment and also not raising subject matter jurisdiction?
(3) Whether trial judge erred in failing to suppress the victim's in-court identification; where there was a substantial likelihood that it had been tainted by a unduly suggestive identification procedure; in violation of due process?
(4) Did trial counsel render ineffective assistance of counsel by her strategical choices of not conducting a proper pre-trial investigation of potential eye-witnesses on defendant's behalf?
(5) Was trial counsel ineffective for failing to show Applicant was illegally arrested?
(6) Was defendant denied effective assistance of counsel and a fair trial, by trial counsel's strategical choice not to press the Court to play the store video to the jury, once the State's witness testified, in his opinion he did not see the defendant on the store video, where defendant allege he and his girlfriend were together on or about the time of this crime occurring?
(7) Was the Applicant denied the right of confrontation and cross examination of the "Conoco Station" store clerk due to counsel's failure to secure this crucial witness?

{PCR Appendix p. 305}. The State followed with a Return dated August 15th, 2001. {PCR Appendix p. 343}.

Attorney Adam Fisher, Jr. represented Petitioner during the trial level of his PCR proceedings. On May 31st, 2001, Fisher filed a Motion for Discovery, which was granted with regard to a convenience store videotape by a Form 4 Order of Judge Few dated September 7th, 2001.

-3-

Attorney Fisher also issued a "Petition on Behalf of Defendant Douglas Clark Regarding Post-Conviction Relief Hearing" dated October 22nd, 2002, in which he asserted the following grounds for relief on behalf of Petitioner:

> (1) Applicant would show that counsel has been ineffective because she did not investigate.
> (2) Counsel was ineffective for failing to object to the prosecutor's amendment of the indictment.
> (3) Counsel was ineffective for failing to suppress Cosette Lemons identification testimony.
> (4) Counsel was ineffective for choosing not to conduct a proper pretrial investigation of potential eyewitnesses.
> (5) Counsel was ineffective for failing to show officers involved used a flimsy excuse to arrest applicant.
> (6) Counsel was ineffective for failing to press the court to play the Conoco store video for the jury to see once the states witnesses testified he did not ss the applicant on the video.
> (7) Counsel was ineffective and the applicant was denied the right to confrontation for failing to secure the Conoco Station clerk as a witness.

An evidentiary hearing in Petitioner's APCR was held before the Honorable John C. Few on October 30th, 2002. Petitioner was present and represented by his appointed counsel Fisher; the State was represented by Assistant Attorney General Bryan Dukes. {PCR Appendix p. 348}. Petitioner called Phyllis Harris, Shomeka Dillard, Patricia Hearst, and himself to testify; the State called trial counsel Pendleton. On May 28th, 2003, Judge Few issued an Order in which he stated he thought he had issued a Final Order of Dismissal but apparently had not, and in which he directed the Attorney General's Office to prepare an Order. Apparently due to inadvertence, this request was misrouted and then not acted upon until August 2004. Judge Few rejected Petitioner's claims for relief in a formal Order of Dismissal dated September 13th, 2004. {PCR Appendix p. 423}.[2]

---

[2]Meanwhile, Petitioner filed on June 3rd, 2004, a pro se federal Petition for Writ of Habeas Corpus in the District Court for the District of South Carolina (4:04-1759-18BH). Respondent filed a Return and Motion for Summary Judgment on July 5th, 2005, in which

Attorney Fisher timely filed and served a Notice of Appeal with the state supreme court from Judge Few's Order of Dismissal in the PCR. Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his PCR appeal. On November 29th, 2004, Pachak filed a Petition for Writ of Certiorari, in which he raised the following issue on behalf of Petitioner:

> Whether defense counsel was ineffective in failing to object to the portion of the solicitor's closing argument that vouched for and bolstered the credibility of the state's key witnesses?

Assistant Attorney General Karen Ratigan filed a Return to the Petition for Writ of Certiorari dated March 11th, 2005.

The case was transferred to the South Carolina Court of Appeals by order dated December 20th, 2005. On May 8th, 2006, the state court of appeals issued an order in which it granted the petition for writ of certiorari and requested full briefing. On July 10th, 2006, Pachak filed a Final Brief of Petitioner; the State filed its Final Brief of Respondent on July 28th, 2006.

On October 4th, 2007, the South Carolina Court of Appeals issued a decision in which it affirmed the denial of PCR relief. Clark v.State, Unpub. Op. No. 2007-UP-411 (S.C. Ct. App. 2007). The Remittitur was issued on October 22nd, 2007.

## III.    PETITIONER'S GROUNDS FOR RELIEF

On February 19, 2008, the petitioner filed this habeas petition raising the following grounds,

---

it argued the habeas petition should be dismissed without prejudice because Petitioner's PCR appeal was still pending. United States Magistrate Judge Thomas E. Rogers, III, issued an Report and Recommendation on January 23rd, 2006, in which he asserted the petition should be dismissed without prejudice for failure to prosecute. United States District Judge David C. Norton issued an Order dismissing the case without prejudice on January 26th, 2006.

quoted verbatim:

**GROUND ONE:**     Suggestive Identification

Supporting Facts:     Petitioner went to a bond hearing and was the only one in court in an orange jumpsuit and shackles on his feet while the victim and witness were standing in the courtroom.  The victim stated to the witness, "Terry he's here over there."  Victim testified that when she said "over there" the witness walked around to get a frontal look and said "you're right."  The bond hearing became a one person show-up procedure.

**GROUND TWO:**     Ineffective Assistance of Counsel: Counsel failed to investigate the illegal arrest.

Supporting Facts:     Petitioner was arrested for "failure to appear" ticket # 5825ALL false name to police.  This ticket records show was settled on 2/24/98 with time served.  Petitioner was arrested on June 25, 1998 for the same ticket and charged.  The detective stated that he was told not to bring it out that he arrested Petitioner for this failure to appear in ticket # 5825ALL false name to police.

**GROUND THREE:**  Ineffective Assistance of Counsel

Supporting Facts:     Counsel failed to call alibi witness to testify on Petitioner's behalf at trial.

**GROUND FOUR:**     Ineffective assistance of counsel for failing to request that applicant take polygraph test

Supporting Facts:     Petitioner requested counsel to request that a polygraph test be given him to prove his innocence and counsel stated she would.  Petitioner has claimed from the beginning and still today that he is innocent and this there is evidence to prove if given the chance.

## IV.     SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants,

to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972);

Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact,

but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction

does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Dep't of Social Servs.</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In <u>Celotex</u>, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## V.     STANDARD OF REVIEW

Since Clark filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir. 1998);

Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--(1) resulted
> in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state

court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas

proceeding by specifically directing the habeas court to make the state court decision the cynosure

of federal review.").  Further, the facts determined by the state court to which this standard is applied

are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams

v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of

federal law, this court must separately analyze the "contrary to" and "unreasonable application"

phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified

procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## VI.     PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner

to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.     Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2)     An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)     A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state

courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

> The United States Supreme Court has consistently enforced the exhaustion requirement.

>> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir.

1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

B.     Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

C.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the   filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

D.     Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry

v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII.    ANALYSIS

-13-

A.     Procedural Bar

Respondent argues that Grounds two, three and four of the Petition are procedurally barred from review by this court because, although the PCR court ruled on the issues, they were not raised in the PCR petition for writ of certiorari.  Respondent argues that since Petitioner did not present these issues to the state's highest court when he had his only opportunity, and the state courts would find any new attempt to raise the issue procedurally barred by the PCR statute of limitations and the bar against successive applications, then Petitioner is procedurally barred from achieving review of these claims in federal habeas corpus.

A review of the record reveals that the issues in Grounds Two, Three, and Four are procedurally barred from habeas corpus review.  In those Grounds, Plaintiff asserts ineffective assistance of counsel for counsel's failure to investigate the illegal arrest, failure to call an alibi witness, and failure to request a polygraph for Petitioner.  While Plaintiff did raise these issues in his PCR Application, he did not raise them in his PCR Petition for Writ of Certiorari.  Petitioner does not argue cause for or prejudice as a result of his failure to raise these issues in his PCR Petition for Writ of Certiorari.  The ineffective assistance of counsel issues in Grounds Two, Three, and Four have not been ruled upon by the highest state court and are procedurally barred from habeas review. Therefore, Respondent is entitled to summary judgment as to Grounds Two, Three, and Four.

Respondent does not argue that Ground One is procedurally barred.  In Ground One, Petitioner asserts that his bond hearing essentially became a "one person show-up," which made the identifications of him impermissibly suggestive.  Petitioner asserts that he "went to a bond hearing and was the only one in court with an orange jumpsuit and shackles on his feet while the victim and witness were standing in the courtroom.  The victim stated to the witness, 'Terry he's here over

-14-

there.' Victim testified that when she said 'over there' the witness walked around to get a frontal look and said 'you're right.' The bond hearing became a one person show-up procedure." Petition, Ground One.

Respondent provides the following narrative, which is supported by the record and undisputed by Petitioner, regarding the identifications of Petitioner:

> Both the victim and the boyfriend made identifications of Petitioner. At trial, counsel made a number of motions with regard to the identifications. Counsel contended that with regard to two of the photographic lineups, they reflected the individuals in jail clothing, which counsel asserted was "highly prejudicial" in that it suggested a prior record. Counsel complained that the second lineup, from which neither the victim nor the boyfriend made an identification, was destroyed by police. Finally, counsel complained that any in-court identification should be precluded because the victim saw Petitioner in shackles at the bond hearing. The court denied the motions, finding the issues as to the bond hearing and the missing lineup went to weight, not admissibility. {PCR App. 31-35}.
>
> Throughout trial, the State introduced testimony and counsel cross-examined the officers, victim, and boyfriend on the identifications made. Responding officer Skardon testified the boyfriend described the assailant as a black male 20-25 years of age, 5'9", 185 pounds, with black hair. {PCR App. 52-53}.
>
> The victim stated that when she saw the assailant, she saw a "perfect profile" of him. {PCR App. 63}. She described him as 5'9" to 5'10", light-skinned with short hair, but with something "a little different" about him. She stated they did an initial composite with police, but she "felt better" about the picture when they subsequently did a drawing with a police sketch artist. {PCR App. 78-79}. The victim stated two officers brought two lineups for her and the boyfriend to view. They were shown them in separate rooms, and while the victim did not see anyone similar on the first lineup, she saw someone who looked similar on the second. {PCR App. 79-82}. Sometime later, the police came out with another lineup, and the victim picked out one person she thought looked similar to the suspect. However, she stated she was "hesitant to finger anyone" because she only saw the assailant so briefly, and wanted to be "absolutely sure". She said she felt like she could make a positive identification if she saw a "living, breathing person" and could see a profile. She asked if she could do an in-person lineup but was told those were not done anymore. {PCR App. 82-84; 107-09}.
>
> Some time later, the victim went to the bond hearing. She stated she was looking at the floor as she did not want to be there, when she saw a man in shackles.

She looked up and "a chill went over [her]", and she thought, "Oh my God, that's him". At trial, the victim identified Petitioner in court, {PCR App. 84-86}, and was cross-examined extensively on her identification. {PCR App. 86-107}. She specifically denied Petitioner was pointed out to her at the bond hearing. {PCR App. 102-03}. She admitted she described the assailant as weighing 170 pounds, but she stated she based that on how much her boyfriend weighed as she thought the assailant and her boyfriend had similar stature. {PCR App. 86-88; 106-07}.

The boyfriend Terry testified he stopped at the door to the apartment because it was ajar, which was unusual given the time of night. Suddenly, it was jerked open by a man.  Terry grabbed him, but the man pushed him to the side and ran away. Terry stated he was face to face with the man for three to five seconds. He described him as a light skinned black male of average build, with short hair, and an unusual nose that was "more like a caucasian nose". Terry said he took a mental picture of the man, and then chased him before finally stopping as the man was too fast. In a statement to police after the crime, he described the assailant as 5'9", 170-190 pounds, medium complexion, short hair, average nose and thin lips. {PCR App. 113-17}.

Terry stated that they did a composite with officers using the kit containing various facial features. He testified he "didn't feel real good about the composite". However, they subsequently had a session with a police sketch artist, and Terry stated while it was not perfect, he felt the police artist had done "a real good job". Subsequently, police arrived and separately showed Terry and the victim two photographic lineup cards. On one of the cards Terry picked out someone he said "looked like" the assailant, but Terry told the officers he could not be sure about any of them. Terry said he did not want an innocent person accused, so he told the officers if he was not 100% sure he could not select one.  {PCR App. 117-26}.

Some time later officers came to his work to show him a third lineup. This time, Terry was very excited as within five to ten seconds he stated, "Gosh, that's him". Terry said while he had doubt looking at the first lineups, he had no doubt when he saw Petitioner in the third lineup. He identified Petitioner in court. {PCR App. 126-29}.

Terry was also cross-examined extensively by defense counsel on the identification. He admitted that in a statement to police after the crime, he described the assailant as 5'9", 170-190 pounds, medium complexion, short hair, average nose and thin lips. {PCR App. 129-30}. Terry thought the man was in his twenties. {PCR App. 133}. When arrested, Petitioner was thirty-nine years old and 5'6" tall. He did not have thin lips and was not 170-190 pounds. {PCR App. 148}.

The sketch artist testified about his interaction with the victim and her boyfriend. His notes reflect a description from them of black male, 35 years old, light to medium complexion, 5'8" to 5'9", short hair, normal forehead, thin lips, and thin

nose. {PCR App. 169-74}. The witnesses stated they were pleased with the drawing and said it was a 7 ½ to 8 on a scale of 10 in similarity. {PCR App. 176-79}.

Officer Blackburn testified that he would show the sketch and composite to patrol officers at roll call, and an officer came up to him with a suggested name. Officer Blackburn prepared a photo lineup which he gave to Officer Clardy to take to the victims. {PCR App. 184-85}.

Officer Clardy testified he prepared a lineup including a man he had stopped in the area and took that lineup and Blackburn's lineup to the victims. The victims said no one on Clardy's lineup looked like the assailant, so it had no relevance and was not saved. On Blackburn's card, the victims took a long look on one individual on there, but did not want to select him as they were not sure and did not want to select the wrong person. {PCR App. 198-200}. On cross, he noted that the victim and the boyfriend were questioned separately, and both were focused on the same individual in the lineup, but neither was positive. {PCR App. 204-05}.

Officer Burgess testified about stopping Petitioner in the area and taking him in for questioning due to his similarity to the composite. Officer Burgess prepared a lineup with Petitioner within it and showed it to the victim. She stated she could not be positive, but selected Petitioner's picture as one who had the same nose and eyes. Burgess and another officer then visited the boyfriend, who immediately identified Petitioner as the assailant when shown the lineup. {PCR App. 211-21}. On cross, Officer Burgess testified that Petitioner's face matched the description, and that in his experience it was not uncommon for the perpetrator to be described by witnesses as a little bigger or smaller than reality. {PCR App. 223}. On redirect, Burgess noted Petitioner looked younger than his age and seemed stockier than his actual weight. {PCR App. 226}.

The appellate defender challenged the failure to suppress in the Final Brief of Appellant, in which she argued the bond hearing became a one-person show up. {PCR App. 279}. The South Carolina Court of Appeals affirmed, stating:

> The record here shows the victim did not have a very good opportunity to view the intruder and her prior description was not completely accurate as to height, weight and age. However, there is evidence of record, that the appellant did not look his actual weight and age. The victim also indicated she mainly saw the profile of the intruder and felt she could better identify him once given the opportunity to observe him in person. Further, the victim and boyfriend both testified the artist's composite looked very similar to the intruder, and the police officer indicated the appellant looked just like the composite. The victim was very certain appellant was the intruder when she observed him at the bond hearing. Finally, although

> the record does not reflect exactly when the hearing was held, it does show appellant was tried within four months of the incident. Considering the totality of the circumstances, it does not appear the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

{PCR App. 304}.

Return and Memorandum of Law in Support of Motion for Summary Judgment at pp. 8-12.

An in-court identification is inadmissible if a suggestive out-of-court identification created a substantial likelihood of misidentification. Pursuant to Neil v. Biggers, 409 U.S. 188 (1972), a two-prong inquiry determines the admissibility of an out-of-court identification. First, the court must ascertain whether the identification process was unduly suggestive. If it was, the court must next determine if the identification was nevertheless so reliable that no substantial likelihood of misidentification existed. State v. Moore, 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000); State v. Brown, 356 S.C. 496, 589 S.E.2d 781 (Ct. App. 2003).

To determine whether an identification is reliable, a court must consider the following factors: (1) opportunity to view the crime, (2) degree of attention, (3) accuracy of prior description, (4) level of certainty demonstrated, (5) amount of time from the crime to the confrontation. Moore, 343 S.C. at 298, 540 S.E.2d at 448-49 (citing Biggers, 409 U.S. at 199, 93 S.Ct. at 382; State v. Stewart, 275 S.C. 447, 450, 272 S.E.2d 628, 629 (1980)).

The state court concluded that, while Petitioner's presence in shackles at a bond hearing could certainly be suggestive, the subsequent in-court identification was not so tainted as to preclude admissibility, given: (1) the victim's initial tentative identification of Petitioner in the photo lineup, (2) her statement even then that she was being very careful but felt she could be more certain if she saw the defendant in person, (3) the certainty of her identification at the bond hearing, when a "chill"

-18-

went over her as she saw Petitioner, (4) the similarity of the sketch to Petitioner's appearance, as testified to by the victim, Terry, and Officer Burgess, (5) the testimony Petitioner did not look his age and appeared heavier than he was, explaining those discrepancies, and (6) the fact Petitioner was tried a scant four months after the incident.  A review of the facts and proceedings in the state court reveals that the ruling on the identification did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Thus, it is recommended that summary judgment be granted on this issue.

## VIII.   CONCLUSION

For the reasons set forth above, it is recommended that Respondent's Motion for Summary Judgment (Document # 14) be granted.

Respectfully submitted,

 s/Thomas E. Rogers, III_____
Thomas E. Rogers, III
United States Magistrate Judge

February 3, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**