IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Douglas Clark, #253429, ) | |
| ) | C/A No. 4:08-CV-00535-DCN |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Tim Riley, Warden, Tyger River ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This matter is before the court on a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. The respondent has moved for summary judgment. The record includes Magistrate Judge Thomas E. Rogers, III's report and recommendation entered pursuant to 28 U.S.C. § 636(b)(1), in which he recommends that the court grant respondent's motion for summary judgment. Petitioner has submitted written objections to that report and recommendation. For the reasons set forth below, the court adopts the magistrate judge's report and recommendation and grants respondent's motion for summary judgment.

## I.  BACKGROUND

Petitioner is a state inmate in the custody of respondent and the South Carolina Department of Corrections. In September 1998, petitioner was indicted in the Court of General Sessions for Greenville County, South Carolina, on charges of assault and battery of a high and aggravated nature (ABHAN), kidnapping, and first degree burglary. A jury found petitioner guilty on all charges in October 1998. The trial judge sentenced

1

petitioner to twenty years for the burglary, twenty years for the kidnapping, and ten years for the ABHAN, with sentences to run concurrently.

Petitioner timely filed a notice of appeal with the South Carolina Court of Appeals on October 21, 1998. Assistant Appellate Defender M. Anne Pearce, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his direct appeal. On February 16, 2000, petitioner filed a final brief with the state court of appeals, in which he raised the following issue:

> Whether trial judge erred in failing to suppress the victim's in-court identification where there was a substantial likelihood that it had been tainted by an unduly suggestive identification procdeure, in violation of due process.

(PCR Appendix p. 270). The state filed a final brief on February 2, 2000. (PCR Appendix p. 284). Following submission to a panel of the court of appeals on March 1, 2000, that court affirmed petitioner's convictions and sentences by an opinion dated April 17, 2000. State v. Clark, Unpub. Op. No. 2000-UP-0282 (S.C. Ct. App. 2000). (PCR Appendix p. 301). Petitioner then filed a petition for rehearing. The court of appeals denied the rehearing petition on June 28, 2000, and the remittitur was issued on August 9, 2000.

Petitioner next filed an application for post-conviction relief (APCR) on January 10, 2001. Proceeding pro se, petitioner raised the following claims:

> (1) Was trial counsel ineffective for failing to investigate the case?
> (2) Was trial counsel ineffective for failing to object to amendment of indictment and also not raising subject matter jurisdiction?
> (3) Whether trial judge erred in failing to suppress the victim's in-court identification; where there was a substantial

> likelihood that it had been tainted by an unduly suggestive identification procedure; in violation of due process?
> (4) Did trial counsel render ineffective assistance of counsel by her strategical choices of not conducting a proper pre-trial investigation of potential eye-witnesses on defendant's behalf?
> (5) Was trial counsel ineffective for failing to show Applicant was illegally arrested?
> (6) Was defendant denied effective assistance of counsel and a fair trial, by trial counsel's strategical choice not to press the Court to play the store video to the jury, once the State's witness testified, in his opinion he did not see the defendant on the store video, where defendant allege he and his girlfriend were together on or about the time of this crime occurring?
> (7) Was the Applicant denied the right of confrontation and cross examination of the "Conoco Station" store clerk due to counsel's failure to secure this crucial witness?

(PCR Appendix p. 305). The state followed with a return dated August 15, 2001. (PCR Appendix p. 343).

Attorney Adam Fisher, Jr. represented petitioner during the trial level of his PCR proceedings. On May 31, 2001, petitioner filed a motion for discovery, which was granted with regard to a convenience store videotape. Attorney Fisher also filed a "Petition on Behalf of Defendant Douglas Clark Regarding Post-Conviction Relief Hearing" dated October 22, 2002, in which he asserted the following grounds for relief on behalf of petitioner:

> (1) Applicant would show that counsel has been ineffective because she did not investigate.
> (2) Counsel was ineffective for failing to object to the prosecutor's amendment of the indictment.
> (3) Counsel was ineffective for failing to suppress Cosette Lemon's identification testimony.
> (4) Counsel was ineffective for choosing not to conduct a proper pretrial investigation of potential eyewitnesses.
> (5) Counsel was ineffective for failing to show officers

>   involved used a flimsy excuse to arrest applicant.
>   (6) Counsel was ineffective for failing to press the court to play the Conoco store video for the jury to see once the states' witnesses testified he did not see the applicant on the video.
>   (7) Counsel was ineffective and the applicant was denied the right to confrontation for failing to secure the Conoco Station clerk as a witness.

An evidentiary hearing was held before the Honorable John C. Few on October 30, 2002. Petitioner was present and represented by attorney Fisher. (PCR Appendix p. 348). Petitioner called Phyllis Harris, Shomeka Dillard, Patricia Hearst, and himself to testify; the state called trial counsel. On May 28, 2003, Judge Few issued an order in which he stated he thought he had issued a final order of dismissal but apparently had not, and directed the Attorney General's office to prepare an order. Apparently due to inadvertence, this request was misrouted and then not acted upon until August 2004. Judge Few rejected petitioner's claims for relief in a formal order of dismissal dated September 13, 2004.[1] (PCR Appendix p. 423).

Petitioner timely filed and served a notice of appeal with the Supreme Court of South Carolina from Judge Few's order of dismissal in the PCR proceeding. Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his PCR appeal. On November 29, 2004, attorney Pachak filed a petition for writ of certiorari, in which he raised the

---

[1] Meanwhile, on June 3, 2004, petitioner filed a pro se petition for a writ of habeas corpus in this court. Respondent filed a return and motion for summary judgment, in which it argued the habeas petition should be dismissed without prejudice because petitioner's PCR proceeding was still pending. The court dismissed that case without prejudice on January 26, 2006.

following issue on behalf of petitioner:

> Whether defense counsel was ineffective in failing to object to the portion of the solicitor's closing argument that vouched for and bolstered the credibility of the state's key witnesses?

The state filed a return on March 11, 2005. The case was transferred to the South Carolina Court of Appeals by order dated December 20, 2005. On May 8, 2006, the court of appeals issued an order in which it granted the petition for writ of certiorari and requested full briefing. On July 10, 2006, petitioner filed a final brief; the state filed its final brief on July 28, 2006. On October 4, 2007, the South Carolina Court of Appeals issued a decision in which it affirmed the denial of PCR relief. Clark v. State, Unpub. Op. No. 2007-UP-411 (S.C. Ct. App. 2007). The remittitur was issued on October 22, 2007.

On February 19, 2008, petitioner filed this habeas petition raising the following grounds:

> **GROUND ONE:** Suggestive Identification
> **GROUND TWO:** Ineffective Assistance of Counsel for failing to investigate the illegal arrest
> **GROUND THREE:** Ineffective Assistance of Counsel for failing to call alibi witness
> **GROUND FOUR:** Ineffective assistance of counsel for failing to request that applicant take polygraph test

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report and recommendation to which a specific, written objection is made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This

5

court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir.1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further consideration. 28 U.S.C. § 636(b) (1).

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof." Id. at 322. Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252.

### III.  DISCUSSION

Under 28 U.S.C. § 2254(a), the court has jurisdiction to hear a petition for a writ of habeas corpus made on behalf of a person in custody pursuant to the judgment of a state court.  That jurisdiction may be exercised only for the purpose of determining whether that person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The court's power to grant habeas relief is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1213, as codified at 28 U.S.C. § 2254(d).  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" means "the holdings, as opposed to the dicta, of the [Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); see Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

A state court's decision is contrary to clearly established federal law if:  (1) the

7

state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court confronted facts that are materially indistinguishable from a relevant Supreme Court precedent and arrived at an opposite result.  Williams, 529 U.S. at 405.  A state court's decision involves an unreasonable application of clearly established federal law if:  (1) the state court identified the correct governing legal rule but unreasonably applied it to the facts of the particular state prisoner's case; or (2) the state court either unreasonably extended a legal principle to a new context where it should not apply or unreasonably refused to extend that principle to a new context where it should apply.  Id. at 407.  An application of federal law is not "unreasonable" simply because a federal court concludes, using its independent judgment, that the state court erred.  Id. at 410-11.  "'[A]n unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of law is not, in all instances, objectively unreasonable."  Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410).

AEDPA requires deference to the state court's factual findings.  Under § 2254(d)(2), habeas relief can be granted only when the state court based its decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the state court's factual findings are afforded a presumption of correctness, which the petitioner can rebut only by clear and convincing evidence.  The Fourth Circuit has discussed the interplay of § 2254(d)(2) with § 2254(e)(1), holding that a district court must apply the presumption of correctness when reviewing factual findings for unreasonableness.  See Lenz v. Washington, 444 F.3d 295,

300-01 (4th Cir. 2006); see also Baum v. Rushton, 2007 WL 2903923, at *4 n.1 (D.S.C. 2007) (noting that, although courts in other circuits have held that the two provisions should be applied separately, "Fourth Circuit and Supreme Court precedent indicate that the two provisions are interrelated").

Petitioner first objects to the magistrate judge's conclusion that grounds two, three, and four of his petition are procedurally barred from review. "Under the well-established doctrine of procedural default, a federal habeas court may not review a claim that a state court has found to be clearly and expressly defaulted under an independent and adequate state procedural rule. . . ." Weeks v. Angelone, 176 F.3d 249, 269 (4th Cir.1999). Petitioner raised grounds two, three, and four in his APCR; however, because he failed to appeal the denial of these claims, these claims are procedurally defaulted. See Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir.1986) ("[F]ailure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims.").

Procedural default may be excused, however, if petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). In this regard, petitioner argues that procedural default should not apply because attorney Pachak was ineffective for failing to raise these claims. According to petitioner, attorney Pachak "refused to argue these issues to the state's highest court and the court should not hold Petitioner accountable for counsel's inaction to file all meritorious grounds available to Petitioner,

9

as Petitioner requested these issues to be <u>raised and argued</u>." Pet. Obj. 2.  The Fourth Circuit has held, however, that a petitioner for federal habeas cannot show "cause" and "prejudice" to excuse a procedural default by alleging ineffective assistance of counsel because there is no constitutional right to effective assistance of counsel in state post-conviction proceedings.  <u>Mackall v. Angelone</u>, 131 F.3d 442, 449 (4th Cir. 1997). Moreover, petitioner has failed to show that a fundamental miscarriage of justice will occur if these claims are not considered.  Therefore, the magistrate judge correctly concluded that petitioner's claims two, three, and four are procedurally barred.

Petitioner next objects to the magistrate judge's failure to address petitioner's claim of whether defense counsel was ineffective for failing to object to the portion of the solicitor's closing argument that vouched for and bolstered the credibility of the state's key witness.  Petitioner raised this issue in his appeal from the PCR court's denial of his application.  He did not, however, raise this issue in the instant petition for habeas relief. Thus, the magistrate judge did not err by failing to address this issue.

Petitioner's final objection concerns the magistrate judge's recommendation that summary judgment be granted in favor of respondent on the issue of suggestive identification.  As petitioner exhausted this issue in his direct appeal in the state courts, it is not barred from federal habeas review.  However, under the deferential habeas review standard, the court finds that petitioner is not entitled to relief on this claim.

The facts underlying the suggestive identification issue are as follows.[2]  Cosette Lemon, the victim, was attacked shortly after arriving home one evening.  Her assailant

---

[2] A more detailed recitation of the facts can be found in the South Carolina Court of Appeals' opinion, as well as is in the magistrate judge's report and recommendation.

grabbed her, jerked her around, and shoved her face down on the couch. He then pulled Lemon up off the couch and forced her into the bedroom, where he pushed her down on the bed and choked her. After the assailant asked Lemon if she had any money, Lemon heard a noise at the door and heard her assailant running away. Lemon was able to free herself, and she ran into the kitchen. From there she saw her boyfriend, Terry Shackett, running around the corner of the building.

Shackett testified that when he arrived at Lemon's apartment, he noticed the main door was open and realized something was not right. Suddenly, the door jerked open and he saw a black male standing in the doorway. The assailant pushed Shackett to the side and began running. Shackett chased the assailant, but could not catch him.

Lemon described her assailant to police as a light-skinned black man with short hair, between twenty and thirty years old, weighing around 175 pounds, and about five feet nine inches or five feet ten inches in height. The evidence of record shows petitioner was actually in his late thirties, was about five feet five inches in height, and weighed approximately 140 pounds. The officer who arrested petitioner testified, however, that petitioner looked younger than his actual age and looked heavier than his actual weight.

The day after the attack, Lemon and Shackett helped put together a composite of the assailant at the police station. Lemon and Shackett were not pleased with results of that composite, and they later met with a sketch artist to put a new composite together, which both Lemon and Shackett thought looked very similar to the assailant.

Several nights after the attack, Lemon and Shackett were shown two different photo line-ups. Lemon did not identify anyone from the first line-up. In the second one,

she indicated one person looked more like her assailant than the others, but she did not make a positive identification. Shackett also picked one person from one of the line-ups as looking similar to the assailant, but he was not sure. Both Lemon and Shackett had pointed out the same person.

Using the second composite drawing, the police surveilled the area near Lemon's apartment. Officers observed a black male walking in the area who looked just like the composite. That person was later identified in court as petitioner. Petitioner's picture was then placed in a third photographic line-up. Lemon felt strongly that petitioner's picture looked like her assailant, but could not be absolutely sure because she had seen her assailant's profile, it was dark, and she had only seen his face for a few seconds. Lemon felt she could better identify someone if she saw him in person, but the police told her they no longer did in-person line-ups. When police showed Shackett the third line-up, he immediately selected petitioner as the assailant, saying he had no doubt that petitioner was the assailant. Shackett later made an in-court identification of petitioner.

Lemon and Shackett went to appellant's bond hearing, where Lemon observed petitioner's profile the same way she had seen him in her apartment. Lemon testified that a chill went over her when she saw petitioner at the bond hearing and recognized him as her asssailant. She said she did not realize petitioner would be at the bond hearing, so it caught her by surprise when she looked up and saw him. Lemon made an in-court identification of petitioner as her assailant.

Petitioner argues his actual appearance varied substantially from the descriptions given by Lemon and that Lemon's observation of him at the bond hearing in prison garb

12

and shackles was the equivalent of a one-person show-up which was unduly suggestive and tainted the subsequent in-court identification. The Supreme Court has outlined a two-step approach to determine the admissibility of identification testimony. First, the defendant must prove that the identification procedure was impermissibly suggestive. Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir.1994) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). Second, even if the defendant proves that the identification procedure was suggestive, an identification is still valid if reliable. Brathwaite, 432 U.S. at 114; Neil v. Biggers, 409 U.S. 188, 199 (1972).

The reliability of eyewitness identifications is assessed "under the totality of the circumstances," Satcher v. Pruett, 126 F.3d 561, 566 (4th Cir.1997), gauged by the five factors identified by the Supreme Court in Neil v. Biggers, 409 U.S. 188, 199-200 (1972). These factors include: "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Brathwaite, 432 U.S. at 114.

The South Carolina Court of Appeals found that Lemon did not have a very good opportunity to view her assailant and her initial description was not completely accurate as to height, weight, and age. However, the court also noted that petitioner looked younger and lighter than his actual age and weight. The court of appeals pointed out that Lemon informed police she could better identify her assailant if she saw him in-person in the same posture she saw him in her apartment. The court went on to note that both Lemon and Shackett testified the second composite looked very similar to the assailant,

13

and a police officer indicated that petitioner looked just like the composite.  Finally, the court observed that Lemon was very certain petitioner was the assailant when she saw him at the bond hearing, and, although the record does not show when the bond hearing was held, it does show that petitioner was tried within four months of the incident.  Based on the totality of the circumstances, the court of appeals concluded, "it does not appear the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The state court's analysis of this issue leads this court to the conclusion that petitioner is not entitled relief.  First, the state court applied the correct legal test.  Second, under the principles of federal habeas review discussed above, the state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  Finally, the state court's ruling did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the magistrate judge's report and recommendation be **ADOPTED** and respondent's motion for summary judgment be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**March 31, 2009**
**Charleston, South Carolina**